UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 22-CV-60710-MGC

CHRISTOPHER GUARNIZO,

       Plaintiff,

vs.

THE CHRYSALIS CENTER, INC,

       Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendant, THE CHRYSALIS CENTER, INC, (hereafter "Chrysalis") Defendant by and through the undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56, hereby files and serves the above-styled Motion and states the following in support thereof:

1.    Plaintiff was terminated for legitimate, nondiscriminatory reasons after Chrysalis managers determined that Plaintiff, a billing specialist who worked remotely, falsified time records when Chrysalis' computer systems revealed there were long periods of time during which Plaintiff was not working.  Plaintiff had childhood leukemia more than two decades ago that is in remission.  In October 2020, Plaintiff e-mailed Chrysalis that he needed to take some tests for bleeding and low hemoglobin.  Plaintiff suspected that this had something to do with his childhood leukemia but has not produced any medical evidence to substantiate that concern.  Plaintiff underwent a colonoscopy in October 2020 which revealed his bleeding was due to hemorrhoids and had nothing to do with cancer.  Plaintiff was never denied any leave request.  Plaintiff had been notified of Chrysalis' policy under the Family

and Medical Leave Act (FMLA) in 2020. Plaintiff's only impairments from his childhood leukemia are that he cannot father children and cannot donate blood. Plaintiff never sought leave for a "serious health condition" and has no damages stemming from his alleged FMLA claim. Plaintiff's termination had nothing to do with childhood leukemia. One other billing specialist was slated for termination at the same time as Plaintiff. That billing specialist is not disabled and never requested FMLA leave.

2.      Plaintiff's FMLA claim is based on his opinion (not medical evidence), that his colonoscopy, for which he was paid, had something to do with his childhood cancer. There is no evidence that he suffers from any chronic condition that necessitated any leave or that he was denied any leave.

Based on the foregoing, Chrysalis respectfully requests that this matter be dismissed at this juncture.

## MEMORANDUM OF LAW

**Plaintiff is not a disabled individual within the meaning of the ADA.**

Plaintiff claims that he is disabled because he had leukemia as a child and as a result he cannot have children or give blood. The act of giving blood is not a major life activity because it is not an activity of central importance to daily life. *See, e.g., generally*, *Salomon v. Mass. Housing Finance Agency,* 2022 WL 258834 (D. Mass. 2023). There are a plethora of cases in which courts have found that leukemia is not necessarily a disability within the meaning of the ADA. *See, e.g., Fredricksen v. United Parcel Service*, 581 F. 3d 516 (7th Cir. 2009). Plaintiff has not proven that the deciding officials knew Plaintiff had leukemia as a child. Instead, Plaintiff provided vague testimony that "everybody" knew he had leukemia as a child because he tells everybody at work that he had leukemia.

To establish a circumstantial *prima facie* case of discrimination under the ADA, the plaintiff must demonstrate that he (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of his disability. *See, e.g., Greenberg v. BellSouth Telecommunications, Inc.,* 498 F. 3d 1258, 1263 (11th Cir.2007); *see also*, 42 U.S.C. § 12112(a) (stating that "no [employer] shall discriminate against a qualified individual with a disability because of the disability of such individual").[3] The plaintiff is disabled if he has "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(2). Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Greenberg,* 498 F. 3d at 1264 (*quoting* 29 C.F.R. § 1630.2(i) (2007)). EEOC regulations inform the courts that the following factors are relevant in determining whether an individual has a disability: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Garrett v. University of Alabama at Birmingham Bd. of Trs.,* 507 F. 3d 1306, 1311 (11th Cir.2007) (*quoting* 29 C.F.R. § 1630.2(j)(2) (2007)).

The ability to give blood is clearly not a major life activity.  *See, e.g., generally, Salomon v. Mass. Housing Finance Agency,* 2022 WL 258834 (D. Mass. 2023).

Declaring leukemia a disability *per se* would contravene this court's "statutory obligation to determine the existence of disabilities on a case-by-case basis." *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 566 (1999).   Even a person whose leukemia is not in remission would not be considered disabled unless there is evidence that the leukemia will likely become

substantially limiting eventually; it is not a disability until it actually becomes substantially limiting. *See, e.g., Fredricksen v. United Parcel Service*, 581 F. 3d 516 (7th Cir. 2009).; *see, also, Boitnott v. Corning, Inc.,* 2010 WL 246590 (W.D. Va. 2010); *see also generally, Scherer v. Potter,* 443 F.3d 916, 920 (7th Cir.2006) (Rejecting classification of disability on basis of diabetes because "diabetes had not yet worsened to such a stage where it severely restricted his major life activities."). There is simply no evidence that Plaintiff's childhood leukemia is substantially limiting.

Plaintiff has not offered any medical evidence that he has a disability. "Although there appears to be no strict requirement that expert medical testimony must be offered in support of all ADA claims, virtually every case in which a plaintiff prevails includes some offer of medical evidence." *Williams v. Reg'l Planning Comm'n of Greater Birmingham,* 2:08-CV-2269-TMP, 2010 WL 11614222, at *5 (N.D. Ala. Feb. 25, 2010). This particularly true where the nature of the disability is one not readily apparent to a layperson, such as paralysis. *Id.* It has been noted that a "failure to provide the Court with competent medical evidence dooms [a plaintiff's] claims since plaintiffs in ADA cases have 'the burden of establishing with medical evidence the existence of the alleged disability.' " *Id.* (full citation omitted) Courts have recognized that a plaintiff in an ADA action must do more than allege that he has a disability. "Merely having an impairment does not make one disabled for purposes of the ADA." *Cody v. County of Nassau,* 577 F. Supp. 2d 623, 638 (E.D.N.Y. 2008). Evidence of a medical diagnosis of an impairment, with nothing more, is "insufficient" to prove that a plaintiff is disabled. *Simpson v. Alabama Dep't of Human Resources*, 311 Fed. Appx. 264, 267 (11th Cir. 2009).

Courts have held that a plaintiff's personal testimony which describes the alleged limits that affect a major life activity, "without supporting medical testimony, simply is not sufficient to establish his prima facie case under the ADA." *See, e.g., Douglas v. Victor Capital Group* (S.D.N.Y.1998) 21 F. Supp. 2d 379 , 392; *see also, Fagan v. United International Insurance Co.* (S.D.N.Y.2001) 128 F. Supp. 2d 182, 186 n. 2 ("A person alleging a disability protected by the ADA has [the] burden of establishing with medical evidence the existence of the alleged disability...."); *Monroe v. Cortland County, New York* (N.D.N.Y.1999) 37 F.Supp.2d 546, 551 n. 3 (internal citations omitted) ("Claims of disability have been rejected for failure to submit any supporting medical evidence ... This lack of evidence demonstrates that no reasonable jury could conclude Plaintiff was disabled in this respect under the federal statutes."); *Zuppardo v. Suffolk County Vanderbilt Museum* (E.D.N.Y.1998) 19 F. Supp. 2d 52, 56, *aff'd* (2d Cir.1999) 173 F.3d 848, 1999 WL 197205, at *1 (citation omitted) (where the plaintiff "failed to supply ... a single hospital record, doctor's report, expert deposition testimony, or any medical proof whatsoever," no reasonable jury " 'could conclude that the plaintiff was disabled within the meaning of the ADA' "); *Charlotten v. May Department Stores Co.* (S.D.N.Y. Sept. 16, 1998) No. 97 Civ. 8962(HB), 1998 WL 635547, at *4 ("[T]here is no medical evidence—such as an affidavit from her physician—that her medical conditions significantly restricted her ability to perform other jobs). Given this lack of medical evidence, no reasonable jury could conclude that Plaintiff was disabled within the meaning of the ADA."); *Dumas v. Arthur Andersen LLP* (N.D.Ill. Jan. 28, 2000) No. 98 C 5394, 2000 WL 139470, at *3 ("Plaintiff points to no medical evidence supporting he was disabled. All he has is his own testimony that he had poor concentration, got tired running, and could not lift more than ten pounds. Plaintiff has failed to establish that he had an impairment that substantially limited a major

life activity."); *Polderman v. Northwest Airlines, Inc.* (N.D. Ohio 1999) 40 F. Supp. 2d 456, 463 ("Plaintiff's testimony as to her ability to work with the public, without supporting medical testimony, is not sufficient to establish her prima facie case under the ADA.").

In *Cruz Carrillo v. AMR Eagle, Inc.* (D.P.R.2001) 148 F.Supp.2d 142, 145 the court rejected a plaintiff's claims stating "[Plaintiff] failed to introduce into evidence any medical evidence from which a reasonable jury could find that HIV substantially limits a man's ability to reproduce ... [His] testimony, without more, is not enough to shoulder his burden of showing a substantial limitation. He is not an expert in the medical field of immunology or reproduction, and ... no objective evidence has been presented to support his position."

To succeed on his "regarded as" claim, Plaintiff is required to demonstrate that Chrysalis was aware of his leukemia and believed that the condition substantially limited him in a major life activity. *See, e.g., Fredricksen v. United Parcel Serv., Co.,* 581 F. 3d 516, 523 (7th Cir. 2009). Under the "regarded as having ... an impairment" definition of disabled, an individual is considered "disabled" if his employer perceives him as having an ADA-qualifying disability. *See Carruthers v. BSA Advertising, Inc.,* 357 F.3d 1213, 1216 (11th Cir. 2004). That is, he "(1) has an impairment that does not substantially limit a major life activity, but is treated by an employer as though it does; (2) has an impairment that limits a major life activity only because of others' attitudes towards the impairment; or (3) has no impairment whatsoever, but is treated by an employer as having a disability as recognized by the ADA." *Shepard v. United Parcel Serv., Inc.,* 470 Fed. Appx. 726, 729 (11th Cir. 2012)(full citation omitted). "As with actual disabilities, a perceived impairment must be believed to substantially limit a major life activity of the individual." *Id.*

There is simply no evidence that any one at Chrysalis, let alone the decisionmakers, treated Plaintiff has having a disability.   In fact, Plaintiff's contention that everybody at Chrysalis knew of his leukemia is speculative at best.   Plaintiff had a specific recollection of telling Chrysalis' owner, Manny Menendez of his leukemia at the time of his hire in 2015. However, Plaintiff concedes that he has no clue as to whether Menendez had anything to do with his termination. (Def. Stat. of Facts ¶ 4). Even if he had, the "same actor" inference would apply. In *Williams v. Vitro Servs. Corp.,* 14 F. 3d 1438 (11th Cir. 1998), the Eleventh Circuit found a "same actor" circumstance may give rise to a permissible inference that no discriminatory animus motivated the employer's actions. The "same actor" inference arises when the same manager who hired a plaintiff fired a plaintiff.

**Plaintiff never requested an accommodation under the ADA; nor was one needed.**

Plaintiff claims that Chrysalis failed to engage in "an interactive process" to accommodate his alleged disability.   There is absolutely no evidence that Plaintiff requested any accommodation whatsoever other than his allegation that he was allowed to work from home ahead of other workers because of his leukemia.   It is undisputed that Chrysalis had never denied Plaintiff any request for leave, including leave for doctor's appointments; nor had Chrysalis ever asked Plaintiff to reschedule a doctor's appointment. (De. Stat of Facts ¶ 29). Chrysalis never denied Plaintiff any request for any type of leave concerning any medical condition. Plaintiff never exhausted his sick leave or paid time off while he worked at Chrysalis. Plaintiff had no concern that he would have been fired for taking off for medical reasons.

**Plaintiff's was terminated for legitimate, nondiscriminatory reasons.**

Plaintiff was terminated after he was found to have falsified time records.

In the absence of direct or statistical evidence of discrimination, Plaintiff's claims are evaluated based on circumstantial evidence under the traditional *McDonnell Douglas* burden-shifting framework. *Wascura v. City of S. Miami,* 257 F.3d 1238, 1242 (11th Cir. 2001); *Durley v. APAC, Inc.,* 236 F.3d 651, 657 (11th Cir.2000). To establish a prima facie case of employment discrimination under the Americans with Disabilities Act (ADA) a plaintiff must demonstrate that: (1) he has a disability; (2) he is a "qualified individual;" and (3) the defendant unlawfully discriminated against him because of the disability. *Raytheon Co. v. Hernandez,* 540 U.S. 44, 49 n. 3, (2003); *D'Angelo v. ConAgra Foods, Inc.,* 422 F. 3d 1220, 1225–26 (11th Cir. 2005). A plaintiff may create an inference of discrimination through direct or circumstantial evidence such as a showing that similarly situated employees outside of a plaintiff's protected group were treated more favorably. *See, e.g., Hall v.* Dekalb, 503 F. Appx. 781, 787 (11th Cir. 2013)(full citation omitted).   Plaintiff has not met his prima facie burden because there are no similarly situated individuals who were treated more favorably than Plaintiff; nor is there any circumstantial evidence that creates an inference of unlawful discrimination.

Once a plaintiff establishes a prima facie case of discrimination, the defendant-employer must articulate a legitimate, non-discriminatory reason for the challenged action. *See Chapman v. AI Transport,* 229 F. 3d 1012, 1024 (11th Cir.2000) (*en banc*). "However, the employer's burden is merely one of production; it 'need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.' " *Id.* (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254–55 (1981)).

If the employer meets this burden of production, the employee may still prove disparate treatment, for instance, by demonstrating the employer's reason is pretextual. *Id.*

Because the plaintiff bears the burden of establishing pretext for discrimination, he must present "significantly probative" evidence on the issue to avoid summary judgment. *Young v. General Foods Corp.,* 840 F.2d 825 (11th Cir.1988). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." *Young,* 840 F.2d at 830.

In the discrimination context, the Eleventh Circuit has stated that "[it] bears repeating that a mere scintilla of evidence does not create a jury question." *Carter v. City of Miami,* 870 F.2d 578 (11th Cir.1989) (holding, in ADEA case, that defendant was due judgment as a matter of law where plaintiff failed to cast sufficient doubt on defendant's proffered non-discriminatory rationale). The Eleventh Circuit has required that the plaintiff point to facts which, if true, would present a basis for the disbelief of defendant's overall justification. That the plaintiff calls into question some assertions made by the defendant in support of defendant's justification is not enough. The plaintiff must call into question the veracity of the defendant's ultimate justification itself. *See, generally, Brown v. American Honda Motor Co.,* 939 F.2d 946 (11th Cir.1991).

Plaintiff was terminated after he was found to have falsified his time records as shown by several hours of inactivity in Chrysalis' computer system over a period of several days. (Def. Stat of Facts ¶ 17-18). Plaintiff offered no explanation for these huge gaps in time at any time – not at his December 2, 2020 termination meeting, not in his December 3, 2020 e-mail not any time during his employ – and even to this day, Plaintiff offers no explanation for these

huge time gaps. (Def. Stat. of Facts ¶ 19-20). Plaintiff even wrote an e-mail after his termination in which he never attempted to explain these absences; nor did he mention that his colonoscopy had anything to do with his termination. (Def. Stat of Facts ¶ 23). Plaintiff had an abysmal disciplinary history and had been found to be dishonest in the past. (Def. Stat. of Facts ¶ 32). Plaintiff also conceded that Chrysalis' managers had a good faith belief that he had unexplained absences for which he was paid. (Def. Stat. of Facts ¶ 27). The reasons for Plaintiff's termination have nothing at all to do with his alleged disability, real or perceived, or any request for leave. Plaintiff testified that he had never been denied a request for leave and it is undisputed that he was able to work following his colonoscopy. (Def. Stat. of Facts ¶¶ 9, 29). There are no similarly situated individuals. In fact, Plaintiff was terminated along with one other person who was not disabled and had not requested any FMLA leave for the same reason and on the same day. (Def. Stat. of Facts ¶ 22).

**Plaintiff's interference claim fails because did not have a "serious health condition" within the meaning of the FMLA.**

Plaintiff's FMLA interference claim should be denied because there is no evidence that Plaintiff was entitled to FMLA leave. Plaintiff bears the burden of establishing that he is entitled to FMLA leave. *See, e.g., Olsen v. Ohio Edison Co.,* ,979 F. Supp. 2d 1159, 1164 (N.D. Oh. 1997). It is undisputed that none of Plaintiff's requests for leave were denied. There is no evidence that Plaintiff requested leave for childhood leukemia, which has been in remission for decades. Plaintiff requested and was granted leave to have a colonoscopy which resulted in a diagnosis that he had hemorrhoids. Plaintiff presented no evidence that this condition necessitated any leave and in fact, there is no evidence that he sought or took leave for this condition. Plaintiff must prove that he was entitled to FMLA leave in order to have

10

a claim for FMLA interference. *See, e.g., Russell v. N. Broward Hosp.,* 346 F.3d 1335, 1340 (11th Cir.2003).

Under the FMLA, eligible employees are entitled to up to 12 workweeks of unpaid leave during any 12–month period for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). According to federal regulations, "an employee is unable to perform the functions of the position where the health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position." 29 C.F.R. § 825.123(a) (2009) (internal quotation marks omitted). A "serious health condition" denotes "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital ... or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). A serious health condition involving continuing treatment by a health care provider includes "chronic conditions," which are defined as "[a]ny period of incapacity or treatment for such incapacity due to a chronic serious health condition" that:

(1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;

(2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.115(c). "[I]ncapacity means inability to work ... or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." *Id.* § 825.113(b). The FMLA prohibits employers from interfering with any rights guaranteed under the Act. 29 U.S.C. § 2615(a).

Courts have recognized that " § 2615(a) creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *See, e.g., Hurlbert v. St. Mary's Health Care Sys., Inc.,* 439 F. 3d 1286, 1293 (11th Cir.2006) (internal quotation marks omitted). "Interference and retaliation claims both require the employee to establish a serious health condition." *Russell v. N. Broward Hosp.,* 346 F. 3d 1335, 1340 (11th Cir.2003).  Plaintiff alleges the former in the instant case.

"To establish an interference claim, an employee must demonstrate by a preponderance of the evidence that he was denied a benefit to which he was entitled under the FMLA." *Barker v. R.T.G. Furniture Corp.,* 375 Fed. Appx. 966, 967–68 (11th Cir. 2010)(full citation omitted).

In the instant case, there is simply no evidence presented by Plaintiff that he had a chronic or other condition that would qualify as a "serious health condition" within the meaning of the FMLA.  As per ¶ 60 of Plaintiff's Amended Complaint, Plaintiff needed a colonoscopy because he had "internal bleeding and an iron deficiency anemia."  Plaintiff testified that he suspected this had to do with his previous cancer.  However, Plaintiff produced no medical evidence to substantiate that claim.  Courts have held that a plaintiff's own opinion on his condition is not enough to satisfy his burden on summary judgment that he has a "serious health condition" within the meaning of the FMLA. *See, e.g., See, e.g., Olsen* 979 F. Supp. 2d at 1166 (N.D. Oh. 1997);  *see also, Brannon v. OshKosh B'Gosh*, 897 F. Supp. 1028, 1037 (M.D. Tenn. 1995)("plaintiff's own testimony that she was 'too sick to work' is insufficient to prove that her absence was necessary'); *see also,*  At the end of the day, Plaintiff's

suspicion was unfounded in that his condition was caused by hemorrhoids and there is no evidence that he sought leave for this condition.

**Plaintiff's FMLA claim also fails because he cannot show that he suffered any damages.**

It is undisputed that Plaintiff was never denied any leave.

The FMLA only allows for the recovery of lost wages or "actual monetary losses sustained by the employee as a direct result of the violation." 29 U.S.C. § 2617(a)(1)(A)(i)(I) and (II). As per Supreme Court precedent, mere technical violations of the notice requirement, for example, without any actual monetary loss attributable to such violation, is not actionable as a matter of law. *See, Ragsdale v. Wolverine World Wide, Inc.,* 535 US 81 (2002) (invalidating DOL regulation that required an employer to provide an additional 12 weeks of FMLA leave as a penalty for its failure to provide an employee with FMLA notice because the plaintiff was actually provided with all leave required by the FMLA and there was no basis to impose additional liability on the employer).

The *Ragsdale,* Court rejected a Department of Labor (DOL) regulation which allowed for an employee to be entitled to an ***additional*** twelve (12) weeks of leave if an employer failed to designate the initial 12-week period as FMLA leave. The *Ragsdale,* Court noted that it was the DOL's view that there would be an FMLA interference violation even if the employee expected the leave to be designated as such and did not have any leave requests rejected. *Id.* The *Ragsdale*, Court rejected such a viewpoint and noted:

> "The categorical penalty is incompatible with the FMLA's comprehensive remedial mechanism. To prevail under the cause of action set out in § 2617, an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Even then, § 2617 provides no relief unless the employee has been prejudiced by the violation: The employer is

13

> liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I)."

*Ragsdale*, 535 U.S. at 89.

Cases around the country recognize that nominal damages are not recoverable under the FMLA and the failure to demonstrate actual damages are fatal to a FMLA interference claim. *See Walker v. UPS,* 240 F. 3d 1268, 1278 (10th Cir. 2003) (detailed discussion of issue and holding nominal damages are not recoverable under FMLA, in contrast to Title VII claims); *Cianci v. Pettibone Corp.,* 152 F. 3d 723, 728-29 (7th Cir. 1998) (plaintiff had no claim under the FMLA where the record showed that she suffered no diminution of income and incurred no costs as a result of an alleged FMLA violation); *McPhail v. ES3 LLC,* 16 Wage & Hour Cas. 2d (BNA) 244 (M.D. Pa. Apr. 13, 2010) (granting summary judgment on FMLA interference claim because, even assuming Plaintiff put the employer on notice of FMLA-related need for leave, he failed to show any actual damages from the employer's failure to designate his leave as FMLA qualifying); *Lapham v. Vanguard Cellular Systems, Inc.,* 102 F. Supp. 2d 266, 269 (M.D.Pa. 2000) (while plaintiff had a cause of action for interference, she suffered no wage or other monetary loss, therefore "she cannot obtain relief under the FMLA and her claim must be dismissed."); *Oby v. Baton Rouge Marriott,* 329 F. Supp.2d 772, 788 (M.D. La. 2004) ("It is clear that nominal damages are not available under the FMLA because the statutory language of the FMLA specifically limits recovery to actual monetary losses.")

It is undisputed that Plaintiff was never denied any leave. Chrysalis had never denied Plaintiff any request for leave, including leave for doctor's appointments; nor had Chrysalis ever asked Plaintiff to reschedule a doctor's appointment Chrysalis never denied Plaintiff any request for any type of leave concerning any medical condition. (Plaintiff never exhausted his

sick leave or paid time off while he worked at Chrysalis. Plaintiff had no concern that he would have been fired for taking off for medical reasons.

**Conclusion**

Plaintiff was terminated along with one other person who was found to have falsified records. Plaintiff's termination had nothing to do with any request for leave. Plaintiff has not provided evidence that he is disabled due to a condition he had years ago. Any connection to Plaintiff's childhood cancer and his need to have a colonoscopy is not based on any medical evidence but is based on his own speculation. Plaintiff's speculation that his cancer had recurred was alleviated when it was determined he had a condition that is neither disabling nor constitutes a "serious health condition" under the ADA. Plaintiff was paid time off for his colonoscopy and was able to work the rest of the week after the procedure.

Respectfully submitted,

/s Gary A. Costales
Gary A. Costales
Florida Bar No. 0948829
Law Offices of Gary A. Costales, P.A.
1533 Sunset Drive, Suite 150
Miami, FL 33143
(786) 448-7288
(305) 323-7274 (facsimile)
costalesgary@hotmail.com

**CERTIFICATE OF SERVICE**

**I hereby certify** that on August 16, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s Gary A. Costales

**SERVICE LIST**

*CHRISTOPHER GUARNIZO V. THE CHRYSALIS CENTER, INC*
*CASE NO.:22-CV-60710-MGC*
**United States District Court, Southern District of Florida**

Brian H. Pollock, Esq.
E-Mail: brian@fairlawattorney.com

Toussaint Marcus Cummings, Esq.
E-mail: toussaint@fairlawattorney.com

FairLaw Firm
135 San Lorenzo Ave, Suite 770
Coral Gables, FL 33146
(305) 230-4884
(305) 230-4844 (facsimile)
Attorney for Plaintiff
*Notice of Electronic Filing*

Gary A. Costales, Esq.
Email: costalesgary@hotmail.com

Gary A. Costales, P.A.
1533 Sunset Drive, Suite 150
Miami, FL 33143
(786) 448-7288
(305) 323-7274 (facsimile)
Attorney for Defendant
*Notice of Electronic Filing*