UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 22-CV-60710-MGC

CHRISTOPHER GUARNIZO,

    Plaintiff,

vs.

THE CHRYSALIS CENTER, INC,

    Defendant.

_____/

## DEFENDANT'S STATEMENT OF MATERIAL FACTS FOR WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

Defendant, THE CHRYSALIS CENTER, INC, (hereafter "Chrysalis") by and through the undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1 hereby files and serves the above-styled Statement and states the following in support thereof:

1. Chrysalis is a behavioral health organization that provides mental health and substance abuse services to the community. (Ewing Dep. 13:11-13).

2. Chrysalis hired Plaintiff on or about November 23, 2015. (Ex. 5). He was promoted to billing specialist on or about August 15, 2019, and was terminated on December 2, 2022. *Id.*

3. As a billing specialist, Plaintiff used Chrysalis' computer system to go through the medical insurance claims of Chrysalis' clients. (Guarnizo Dep. 54:7-8; Ewing Dep. 122:19-25-123:1-25). Plaintiff reported to Quiana Ewing (f/k/a Quina Barber), billing manager, at the time of his termination. (Ewing Dep. 12:7-17; 18:15-18). Lewis Woodell was over the entire billing department and was Ewing's supervisor. (Ewing Dep. 18:15-18). Jennifer Blue was in charge of human resources at the time.

4. Plaintiff, who was 29 years old at the time of his termination, had childhood leukemia at the age of three that went into remission when he was six years old. (Guarnizo Dep. 36:10-15). Plaintiff told "the owner" of Chrysalis that he had childhood leukemia at the

time he was hired. (Guarnizo Dep. 38:24-29:1-4). However, Plaintiff does not know whether Menendez had anything to do with his termination or if Menendez told Jennifer Blue, human resources, or Quiana Ewing that he had leukemia as a child. (Guarnizo Dep. 44:20-25-45:1; 45:2-5). Plaintiff has no specific recollection of telling Quiana Ewing that he had leukemia but believes he may have told her when he first started in general conversation because he tells all of his coworkers that he had leukemia. (Guarnizo Dep. 45:2-20). Menendez was not named as a witness in Plaintiff's interrogatory responses. (Ex. 13).

5. Plaintiff's childhood leukemia does not affect him today other than his inability to father a biological child or to donate blood. (Guarnizo Dep. 43:5-12). Plaintiff can drive a car and work, among other activities. (Guarnizo Dep. 43:13-19). Plaintiff also testified that he has epilepsy as a result of the leukemia but did not provide any information about that condition during discovery other than his own testimony. (Guarnizo Dep. 38:17-19). Plaintiff testified that he has had about four seizures over the years which all occurred all at night. (Guarnizo Dep. 41:24-25-42:1). Plaintiff testified these seizures did not affect his job at Chrysalis. (Guarnizo Dep. 42:14-18). Plaintiff testified that no medical practitioner has ever told him that he cannot drive a car and that he is able to work. (Guarnizo Dep. 43:15-17).

6. On October 1, 2020, Plaintiff sent an e-mail to Lewis Woodell and Leslie Lynch, a member of top management, that he had to go to the doctor for tests due to "a low hemoglobin result" and wrote "[d]octors believe I may have some sort of internal bleeding" and that he might have medical tests in the months ahead including a "Endoscopy and Colonoscopy procedure." (Ex. 3). Plaintiff chose not to e-mail his supervisor, Quiana Ewing, at that time because both Lynch and Woodell were over Ewing and he wanted to "go to the top." (Guarnizo Dep. 48:7-13).

7. Plaintiff told Ewing at the time of his October 1, 2020 e-mail that he would miss some hours due to doctor's appointments but did not tell her that he had internal bleeding or low hemoglobin. (Ewing Dep. 156:5-13; 158:18-25-159:1-14). Neither Woodell, nor Lynch nor Jennifer Blue, human resources, communicated that Plaintiff was experiencing a specific medical issue. (Ewing Dep. 160:24-25-161:1-8).

8. Plaintiff did not know what was then causing rectal bleeding at the time he sent his October 1, 2020 e-mail. (Guarnizo Dep. 92:18-21). No doctor ever informed Plaintiff that rectal bleeding had anything to do with his childhood leukemia. (Guarnizo Dep. 37:5-11;

76:1-7). Nonetheless, Plaintiff held a belief that his rectal bleeding and low hemoglobin had something to do with leukemia. (Guarnizo Dep. 50:4-10, 19-22). Plaintiff soon found out, after an October 12, 2020 colonoscopy, these conditions were in fact caused by hemorrhoids that had nothing to do with his childhood leukemia. (Guarnizo Dep. 50:4-10, 19-22; Ex. 8).

9. Plaintiff had a colonoscopy done on October 12, 2020. (Exs. 7, 8). The doctor who performed the colonoscopy, Dr. Floriano Marchetti, told Plaintiff that he could return to his normal activities following the colonoscopy, which is also reflected in the medical record for the procedure. *Id.* Dr. Marchetti never informed Plaintiff that the low hemoglobin he was experiencing at the time may have been caused by cancer. *Id.* Plaintiff took paid time off for the colonoscopy and worked the day after the colonoscopy as well as the rest of that week. (Exs. 7, 9).

10. Plaintiff had requested and was granted the ability to work remotely before other employees started to work remotely as a result of the pandemic. (Guarnizo Dep. 17:16-20). Plaintiff claims that he was allowed to work remotely because of his childhood cancer. (Guarnizo Dep. 54:16-20). Plaintiff did not make any other requests to accommodate his alleged disability. (Guarnizo Dep. 54:23-25-55:1).

11. Billing specialists used the "Paycom" system to log in to work each day. The system that billing specialists such as Plaintiff used for their work was known as "Ecr" and logging in to the system was necessary in order for billing specialists to do their job. (Ewing Dep. 122:19-25-123:1-25). A billing specialist's productivity could be measured by a comparison of Ecr and Paycom logins. (Ewing Dep. 123-124).

12. Chrysalis managers noticed a downturn in productivity in the billing department in or about October 2020 after the pandemic forced all billing specialists to work from home. (Ewing Dep. 124:12-25; 161:17-25-162:1-11). Lewis Woodell, who was new to the department in October 2020 had the idea to track productivity through the Ecr and Paycom systems. (Ewing Dep. 127:22-25; 140:15-17). Woodell did not instruct Ewing to specifically focus on Plaintiff's productivity in particular. (Ewing Dep. 128:6-8).

13. Billing specialists, including Plaintiff, were made aware of the downturn in productivity and that their productivity was being watched as a result. (Ewing Dep. 125:5-11, 21-25-126:1; 128:9-23). This was also brought up during weekly meetings. (Ewing Dep.

3

133:21-25-134:1-9). Ewing spoke to Plaintiff verbally about Plaintiff's own downturn in productivity as revealed by the gaps in the Ecr records. (Ewing Dep. 152:14-24).

14. An audit of productivity for the billing department was conducted by Woodell, Ewing and Fredrica Pridgeon. (Ewing Dep. 155:3-6).

15. The performance of Plaintiff's job required that he work on a laptop as there were no tasks that did not require a computer. (Guarnizo Dep. 54:11-15). Plaintiff's work required that he log in to the Ecr system. (Ewing Dep. 123). The entire workday had to be tracked using the logins for the Ecr system. (Ewing Dep. 119:5-19). If any work was to be done by a billing specialist outside of the Ecr system, such as a special project, Ewing expected that the specialist would have sent an email to her stating that work was to be done outside of the system. *Id.*

16. A log in to the Paycom system coupled with no activity having been registered in the Ecr system and a lack of any e-mails explaining the reason for such a discrepancy was indicative of a falsification of time records. (Ewing Dep. 112-13).

17. There were several days in October and November 2022 in which Plaintiff was clocked in to Paycom but there was no activity on his computer whatsoever for a significant period of time or even the entire day. (Exs. 1, 5; Ewing Dep. 148:10-23). On October 5, 2020 Plaintiff clocked in at 8:09 a.m. and there was no activity from 11:57 until 14:22. *Id.* On October 7, 2020 Plaintiff clocked in at 8:24 a.m. and there was no activity from 9:40 until 11:51. *Id.* On October 8, 2020 Plaintiff clocked in at 8:25 a.m. and there was no activity from 9:30 to 10:43, 10:59 to 11:59, and 12:21 to 14:47. *Id.* On October 13, 2020 Plaintiff clocked in at 8:32 a.m. and there was no activity from 8:50 to 10:42, 11:21 to 13:33 and 13:38-14:57. *Id.* On October 20, 2020 Plaintiff clocked in at 8:24 a.m. and there was no activity from 11:38 to 13:46, 13:54 to 15:14. *Id.* On October 23, 2020 Plaintiff clocked in at 8:21 a.m. and there was no activity from 8:47 to 11:36 and 11:36 to 14:07. *Id.* On October 26, 2020 Plaintiff clocked in at 8:11 a.m. and there was no activity from 9:37 to 10:52, 10:52 to 12:15 and12:55 to 15:08. *Id.* On October 28, 2020 Plaintiff clocked in at 8:47 a.m. and there was no activity from 13:00 to 15:41. *Id.* On October 29, 2020 Plaintiff clocked in at 8:51 a.m. and there was no activity from 9:03 to 15:54. *Id.* On October 30, 2020 Plaintiff clocked in at 10:42 a.m. and there was no other activity the entire day. *Id.*

18.     Plaintiff was informed of his termination on December 2, 2020 when he was given a memo that day which stated:

> "Director, Lewis Woodell, Supervisor Quiana Ewing and Chief People and Experience Officer Jennifer Blue met with Mr., Guarnizo to address time and attendance, productivity, productivity during October/November and professional standards. Upon review there were days no work was conducted and days with as little as 3 hours conducted when full-time employment is 8 hours per day or 40 hours per week. Breaks and time off taken that were not reflected on your timesheet is considered misrepresentation of time worked and false time keeping for pay received but not worked from Chrysalis Health."

Plaintiff met with Blue, Woodell and Ewing on December 2, 2020 when he was given the memo (Guarnizo Dep. 8; 13:1-3).

The three managers met with Plaintiff to address time and attendance, productivity and professional standards during the previous October and November periods of inactivity as reflected in the Ecr and Paycom records. (Guarnizo Dep. 12:9-25-13:1-6; Ex. 1). Plaintiff had been informed that he was being terminated because Chrysalis found that there was time missing from his productivity. (Guarnizo Dep. 9:20-25-10:1).

19.     Plaintiff had the opportunity to object to the finding that he had falsified time records during the meeting. (Ewing Dep. 132:13-25-133:1).  Plaintiff did nothing to disabuse Chrysalis of their belief in this regard. (Guarnizo Dep. 30:25-31:1-7).

20.     Plaintiff keeps his own calendar at home and has a cell phone but did not review those records to determine why there would have been long periods of work inactivity. (Guarnizo Dep. 26:13-25-27:1-6).   Plaintiff was deposed in March 2023 and still had no idea what he was doing during those periods of inactivity. (Guarnizo Dep. 24:1-4).

21.     Plaintiff was terminated for the falsification of his time records in October and November 2020 and the dishonesty and insubordination that came with that falsification. (Ewing Dep. 130:19-25-131:1-3;165:13-18). Plaintiff falsified his timesheets when there was no activity registered in the system and there was no corresponding e-mails to explain the reason for any long periods of inactivity. (Ewing Dep. 122:5-13).

22.     The decision was made to terminate another billing specialist, Jocelyn Matteus, at the same time as Plaintiff and for the same reason - the falsification of time records. (Ewing Dep. 136:6-14; Exs. 5).  Matteus is not disabled and never requested leave under the FMLA. (Ewing Dep. 138:8-10; Ex. 5).

23. Plaintiff sent an e-mail to Jennifer Blue the next day, December 3, 2020, and asked for reports showing his decrease in productivity for the months of October and November and also asked to input his hours to verify that his time for the previous weeks were entered. (Ex. 2). Plaintiff did not offer any explanation for the missing time entries in this e-mail; nor did Plaintiff mention anything about cancer or that he had been denied any leave. (Ex. 2). Plaintiff spent "all night" writing this e-mail because he wanted it to be professional. (Guarnizo Dep. 19:21-24; 20:3-8). Plaintiff had received the logins that show no productivity on certain days before he wrote the e-mail. (Guarnizo Dep. 20:23-25-21:1; 24:12-19; 28:18-25-29:1-2).

24. Plaintiff agrees that the login reports at issue show no work activity on different days. (Guarnizo Dep. 21:2-6). Plaintiff has no explanation for the periods of inactivity reflected on the reports other than his own speculation that the system would go down at times. (Guarnizo Dep. 21:7-12). However, when the system went down, or if he had trouble logging on, Plaintiff would e-mail Quiana Ewing and clock out. (Guarnizo Dep. 21:16-21; 53:4-12). Plaintiff could not recall if he e-mailed Ewing on any of those days. *Id.*

25. Plaintiff did not mention anything about a computer crash in his December 3, 2020 e-mail. (Guarnizo Dep. 12:1-12; Ex. 2). Plaintiff acknowledged that the reports reflected, *inter alia*, that he did not perform any work on October 29, 2020, as an example, but could not think of any explanation as to why there would be no activity for long periods of time, other than a computer crash. (Guarnizo Dep. 23:22-25).

26. Billing specialists such as Plaintiff are told to contact human resources if they are unable to log in to the Paycom system to clock in to work. (Ewing Dep. 69:18-25-70:1-7). This practice was memorialized in a written "document of discussion" that Plaintiff was given in December 2016. (Ex. 4). Employees were also told to contact human resources if the computer system was down for any reason. (Ewing Dep. 69:18-25-70:1-7).

27. Plaintiff agreed that he was fired as a result of Chrysalis' review of records showing long periods of time during which he was not working, or at least that Chrysalis managers believed that to be the case. (Guarnizo Dep. 25:8-19; 20:2-10). Plaintiff did nothing to disabuse Chrysalis' managers of their belief in this regard. (Guarnizo Dep. 30:25-31:1-7).

28. Ewing was not aware that Plaintiff had cancer. (Ewing Dep. 26:11-24).

Ewing had been told that Plaintiff was allowed to work from home after the pandemic started because of health reasons and was not given any other information. (Ewing Dep. 23:9-13; 26:25-27:1-27). Such a decision would to allow him to work from home would not have been up to her. (Ewing Dep. 19:5-8). Ewing did not check the productivity of employees at the time Guarnizo was first allowed to work from home. (Ewing Dep. 23:21-25).

29.     Chrysalis never denied Plaintiff any request for leave, including leave for doctor's appointments; nor had Chrysalis ever asked Plaintiff to reschedule a doctor's appointment. (Guarnizo Dep. 17:21-2-18:1-7). Chrysalis never denied Plaintiff any request for any type of leave concerning any medical condition. (Guarnizo Dep. 18:8-12). Plaintiff never exhausted his sick leave or paid time off while he worked at Chrysalis. (Guarnizo Dep. 52:17-19). Plaintiff had no concern that he would have been fired for taking off for medical reasons. (Guarnizo Dep. 52:20-25).

30.     Plaintiff does not feel anybody at Chrysalis received more favorable treatment than himself. (Guarnizo Dep. 84:21-23).

31.     Plaintiff is uncertain as to whether his termination had anything to do with a serious health condition. (Guarnizo Dep. 93:4-8).

32.     Plaintiff had been counseled on several occasions for several reasons including dishonesty. (Ex. 11). Plaintiff was first formally disciplined in November 2016 for constantly watching movies and playing video games on his cellphone. *Id.* He had been several verbal warnings before the writeup. *Id.* A discussion was documented in March 2017. *Id.* Plaintiff's supervisor discussed performance issues with Plaintiff in April 2017. *Id.* Plaintiff was put on a 30-day performance improvement plan in July 2017 and again the next month, August 2017. *Id.* On August 10, 2017 Plaintiff was written up for "two separate occurrences of dishonesty." *Id.*

33.     Ewing had terminated another employee, Deidre Singleton, before the pandemic for not clocking and not working. (Ewing Dep. 67:13-22; 69:5-13).

34.     Chrysalis' written policies, which were received by Plaintiff, reflect a "zero tolerance" policy for matter such as falsifying information in Chrysalis' communications, (Ex. 10).

35.     Plaintiff filed a charge of discrimination with the EEOC. (Ex. 13).

Respectfully submitted,

/s Gary A. Costales
Gary A. Costales
Florida Bar No. 0948829
Law Offices of Gary A. Costales, P.A.
1533 Sunset Drive, Suite 150
Miami, FL 33143
(786) 448-7288
(305) 323-7274 (facsimile)
costalesgary@hotmail.com

## CERTIFICATE OF SERVICE

**I hereby certify** that on August 16, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s Gary A. Costales

## SERVICE LIST

*CHRISTOPHER GUARNIZO V. THE CHRYSALIS CENTER, INC*
*CASE NO.:22-CV-60710-MGC*
**United States District Court, Southern District of Florida**

| | |
|---|---|
| Brian H. Pollock, Esq. | Gary A. Costales, Esq. |
| E-Mail: brian@fairlawattorney.com | Email: costalesgary@hotmail.com |
| | |
| Toussaint Marcus Cummings, Esq. | Gary A. Costales, P.A. |
| E-mail: toussaint@fairlawattorney.com | 1533 Sunset Drive, Suite 150 |
| | Miami, FL 33143 |
| FairLaw Firm | (786) 448-7288 |
| 135 San Lorenzo Ave, Suite 770 | (305) 323-7274 (facsimile) |
| Coral Gables, FL 33146 | Attorney for Defendant |

(305) 230-4884  
(305) 230-4844 (facsimile)  
Attorney for Plaintiff  
*Notice of Electronic Filing*

*Notice of Electronic Filing*